### HOLDANE *v.* SUMNER.

When a corporation of Louisiana which had leased premises on which it had goods liable to the landlord's lien, was owing rent (for the payment of which by the law of the State the landlord had a right by a judicial proceeding to seize the goods, and for the space of fifteen days, if they were removed, to follow and seize them) undertook, in supposed pursuance of the laws of Louisiana which authorize "*any person*" to make a *cessio bonorum*, to make such cession, and the judge having jurisdiction of the matter of cessions generally accepted the cession for the benefit of creditors, and directed that all judicial proceedings against the property be "*stayed*," after which—things proceeding in regular course —the syndic took possession of and sold the goods, *Held*, on a contest between the landlord and judgment creditors for the proceeds of them in the syndic's hands, that although it was finally decided in the Supreme Court of the State that a corporation was not entitled by the laws of Louisiana to make a *cessio bonorum*, and although, accordingly, the order staying all judicial proceedings was vacated and annulled, yet that the landlord had not lost his lien by omitting to follow and seize the goods in the syndic's hands, within the fifteen days after the syndic removed them; and that although the decision in the first instance, of the judge staying all judicial proceedings against the property of the corporation might have been void, as it was finally adjudged to be, yet as the subject generally belonged to him; as the parties were before him, and as he had to decide, in the first instance, the question of his own jurisdiction, his acts were binding till reversed or set aside; and that, as he was acting judicially in what he did, the landlord was not bound, in the face of an express inhibition of judicial proceeding against the goods, to attempt to seize them and thus meet the court with the issue of the strong hand.

APPEAL from the Circuit Court for the District of Louisiana.

This was a bill in equity filed by Sumner and others, as

lessors, against Holdane & Co., one Jeffries, and the Bank of America, to enforce a lien for rent upon certain moneys deposited in the bank, the proceeds of goods which were formerly on the leased premises, and thereby subject to the lessors' privilege. The bank was but a stakeholder. The real defendants were the other parties named, judgment creditors who had garnisheed the moneys for the payment of their judgments. The controversy arose as far back as 1859. The leased premises were known as the Belleville Iron Works, situated near the Mississippi River opposite New Orleans. The tenants were an incorporated company known as the Belleville Iron Works Company. The term of the lease was ten years, commencing the 1st of January, 1856, the rent being a percentage on the amount of work done by the lessees, not to be less than $7500 per annum.

At the close of the year 1858 the company was insolvent, and sought to obtain the benefit of the insolvent laws of Louisiana by making a *cessio bonorum.* The existing law on this subject, which was passed in 1855, declared that *any person* may make a cession of his property to his creditors, provided the surrender be made *bonâ fide,* without fraud, and agreeably to the formalities prescribed therefor. It then directed that any debtor wishing to make a surrender of his estate to his creditors must present his petition for that purpose to any judge having jurisdiction. This petition is to contain a statement of the debtor's affairs, with a schedule of his property, debits, and credits, and be sworn to. The sixth section of the act directs as follows:

" That whenever the judge shall be convinced that the debtor who wants to surrender his property has complied with all the formalities prescribed, he shall indorse on the schedule that the cession of all the property of the insolvent is accepted for the benefit of his creditors, and shall order a meeting of the creditors, to be called in the manner and within the time prescribed for respites; he shall also appoint an attorney to represent the creditors absent or residing out of the State, if there be any mentioned in the schedule."

The seventh section enacts:

" That when issuing the order for the meeting of the credit-ors, the judge shall order that *all the proceedings, as well against the person as the property of the debtor, be stayed.*"

The act then provides for the appointment of a syndic to take possession of the property, and to administer and sell the same, and contains other provisions regulating the en-tire proceedings.

In pursuance of this law the Belleville Iron Works Com-pany, on the 29th of December, 1858, presented their pe-tition in due form to the judge of the Fourth District Court of New Orleans (the proper judge for the purpose), who took cognizance of the case, and by an order of the same date ac-cepted the cession for the benefit of the creditors, appointed a time and place for their meeting, and further directed that in the meantime " *all judicial proceedings against the property of said company be stayed.*" After this the cause proceeded in the regular course. A syndic was duly appointed and qualified, and took charge of the property of the company; and having obtained an order of sale, the whole property was sold under his direction by the sheriff, and netted over $50,000. Out of this money he paid the rent of the works up to April 1st, 1859, the arrears and interest then amount-ing to over $14,000. He then made and filed in the court a tableau of distribution, by which he arranged the claims against the estate in the order of priority and privilege, and placed the entire rent to accrue on the lease after the 1st of April, 1859, being for six years and nine months, amongst the privileged claims; which, with a few other privileged claims, largely exceeded the proceeds of the property remaining in his hands. This tableau was filed May 23d, 1859. It met with strenuous opposition from the ordinary creditors, and a long litigation ensued. Suits were commenced by the defendants and others; and Holdane & Co. recovered judgments in the Circuit Court of the United States on May 11th, 1859, amounting in the aggregate to over $4000. The other de-fendant, Jeffries, sued in the Fourth District Court of New Orleans, and the suit was cumulated with the insolvency proceedings. These proceedings being finally carried by

appeal to the Supreme Court of Louisiana, were wholly set aside, on the ground that the insolvency law was intended for natural persons only, and that a corporation, like the Belleville Iron Works Company could not make a *cessio bonorum* under it. After this decision of the Supreme Court, the cause was remanded to the Fourth District Court of New Orleans, and that court, on the 23d of March, 1860, made the following decree:

"It is ordered, adjudged, and decreed, that the order of the court, entered on the 29th December, 1858, in the case of *The Belleville Iron Works Company* v. *Its Creditors*, staying all judicial proceedings against the property of said company, be vacated and annulled; and it is further ordered, that the plaintiff do have and recover of the defendant, The Belleville Iron Works Company, the sum of $3262.86," &c.

The Supreme Court subsequently held, when the case came up on another appeal,* that the effect of this judgment was to annul the order of 29th December, 1858, in all its parts, and to allow the creditors to proceed as if there had been no surrender, and that the money in the hands of the syndic remained the property of the company and could be seized on execution, and did not become the property of its creditors, by virtue of the *cessio bonorum.*

The defendants having been thus left at liberty to prosecute their judgments to effect, issued executions, and as before said, garnisheed the balance of money in the hands of the syndic, amounting at this time to about $11,000, which he had deposited in bank.

The complainants then, February 23d, 1867, filed this bill to have the said moneys applied to the payment of their rent.

The defendants insisted that the complainants had lost their privilege by not proceeding against the goods themselves, before they were removed from the leased premises, or within fifteen days afterwards; within which time, under the provision of the code, the lessor might seize them if

---

* Jeffries v. Belleville Iron Works Co., 18 Louisiana Annual, 688.

there had been no change of property, and the chattels were still capable of being identified.

The plea of prescription of three years.

The court below, in which the bill was filed, decided that the money belonged to the complainants, lessors of the iron works, and from that decree Holdane & Co., with Jeffries, the opposing creditors, appealed to this court.

*Mr. T. J. Durant, for the appellants:*

. 1. The opinions and decrees of the Supreme Court of Louisiana decide that the Belleville Iron Works Company could not make a *cessio bonorum,* and that all the proceedings in the Fourth District Court of New Orleans were void from beginning to end. With these decisions we have a judgment in our favor on all the points involved in the case, and fatal in all respects to the hopes of the privileged creditors.

There can be no question of landlord's privilege. *Farnet et al.* v. *Their Creditors, and Del Campo, Opponent,*\* shows that if there be no *cessio,* and the goods are removed, the landlord loses his lien unless he seize them within fifteen days afterwards.

2. The landlord did nothing from 1858 till the filing of this bill, nearly ten years. A prescription runs.

*Mr. Conway Robinson, contra:*

1. The landlord was prevented from seizing by a judicial order staying proceedings. This saves his rights; such is the established rule in Louisiana,† and the rule accords with the principles of equity maintained in this court and elsewhere.‡ The case of *Farnet et al.* v. *Their Creditors, and Del Campo, Opponent,* cited on the other side, shows that if there be a *cessio* the landlord's lien is not lost.

2. The landlord having been guilty of no laches, no prescription runs. The war suspended all statutes of limitation.

---

\* 8 Louisiana Annual, 372.

† Paulding *v.* Ketty, 9 Martin, Old Series, 187; Robinson *v.* McCay, 8 Id., New Series, 106; Dennistoun *v.* Malard, 2 Louisiana Annual, 14.

‡ Oliver *v.* Piatt, 3 Howard, 401; Overseers *v.* Bank, 2 Grattan, 548.

Mr. Justice BRADLEY delivered the opinion of the court.

By the Civil Code of Louisiana, the lessor has for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee which are found on the property leased; and in the exercise of this right, the lessor may seize the objects which are subject to it, before the lessee takes them away, or within fifteen days after they are taken away, if they continue to be the property of the lessee, and can be identified.* This seizure is effected by means of a writ of provisional seizure, which is issued to the sheriff upon the lessor filing a petition in the local court showing the amount of rent due, or the amount accruing on the lease, whether due or not, and swearing that he has good reason to believe that the property will be removed.†

But when the goods are *in custodiâ legis*, as where they are seized by a sheriff under an execution, or are placed in the hands of a syndic under a *cessio bonorum*, the lessor cannot exercise this power of seizure, and does not lose his privilege by not exercising it, but said privilege attaches to the proceeds of the property in the officer's hands. This is the immediate result of the laws directing the proceedings in such cases, and has been expressly decided by the Supreme Court of Louisiana. Sheriffs, on execution, are directed to sell subject to the privileges or special mortgages on the property sold.‡ The syndic, under the insolvent law of 1855, is directed to sell the property absolutely, and to distribute it according to the priorities.§ The curator of a decedent's estate is required to sell the property and distribute it in the same manner. In *Robinson* v. *McCay, Curator*,‖ the curator removed the goods from the leased premises, and then, in opposition to the lessor's privilege, set up that he had not asserted his claim by seizure of the goods. The court said: " The representatives of an estate can do nothing which will destroy or impair a claim existing on the deceased's person or property at the moment of his decease.

---

* Civil Code, Articles 2675, 2679.     † Code of Practice, Article 287.

‡ Code of Practice, Articles 679, 683, 706, &c.

§ Note to Civil Code, Article 2169.     ‖ 8 Martin, N. S. 106.

In this instance the removal by the curator cannot have the effect of destroying the privilege, because the lessor could not exercise his privilege on the thing subject to it. The law makes it the duty of the former to take the property into his possession, sell it, and after the sale to settle the order of privileges contradictorily with the other creditors. The proceeds in the hand of the curator represented the thing. The want of power in the lessor to seize prevented the prescription from running against him."

It seems that the sheriff may also sell the goods absolutely upon condition of paying the lessor his rent. If the latter apprehends any danger of the goods being sold and removed without his rent being paid, he may get a rule on the sheriff to pay the rent, or get out an injunction. In *Robinson* v. *Staples*,\* the court directed the sheriff not only to pay the lessor the rent that was then due but to reserve sufficient to pay that which was yet to accrue. The exception was taken in that case that the lessor had not exercised his right of provisional seizure. But the court said: "It is not well argued by the plaintiff's counsel that the lessors cannot have their privilege in this case because they did not make a provisional seizure under the statute. The proceeding was unnecessary, the property being already *in custodiâ legis* under the *fieri facias*. Another creditor threatened to absorb by his proceedings the lessor's security, and if they were not permitted to protect their privilege prospectively, the security would have been lost." It appears from this case, as indeed the words of the Code import, that the lessor's privilege extends to his unaccrued rent as well as to that which is due; but the purpose of quoting it here is to show that when goods are *in custodiâ legis* the lessor's privilege attaches to the proceeds without any act of seizure on his part.

But it has been held that if the goods are not *in custodiâ legis*, or in course of legal administration, the lessor will lose his privilege, unless he enforces his remedy. Thus, in *Farnet et al.* v. *Their Creditors, and Del Campo, Opponent*,† the

---

\* 5 Louisiana Annual, 712.       † 8 Id. 372.

lessees becoming insolvent, an amicable meeting of their creditors was had, at which liquidators were appointed, who were to take charge of the property and act as trustees of all the creditors until the will of the foreign creditors could be ascertained. The property was thereupon removed from the leased premises and put on storage in another building. About a month afterwards one of the lessees made a regular *cessio bonorum*, and the lessor insisted on being placed on the tableau as a privileged creditor. The court held that as no formal assignment was made at the first meeting, it was impossible to give to an amicable arrangement of that sort the effect of a *cessio bonorum*, "by which," said the court, "the rights of creditors are fixed at the date of the surrender. If formal assignment had been made and possession had been given, it might have created an equity in favor of Del Campo [the lessor] against the creditors who took part in the assignment, but certainly against none others;" and the lessor's claim was overruled, because he had suffered the fifteen days to go by without exercising his right of seizure.

Both parties cited this case; the complainants to show that if there be a regular assignment or *cessio bonorum* in form, the lessor's privilege is preserved without his making a seizure; the defendants, to show that if the assignment is not regularly made, the lessor must avail himself of the remedy which the law gives him. In this case a regular *cessio bonorum* in form was made; but the Supreme Court set it aside as unauthorized by the law. The question is, whether this unauthorized *cessio* excused the lessors from following up their remedy, or not. From the authorities which have been cited from the Louisiana reports, it would seem to result that the lessor is only excused from making a seizure in order to preserve his privilege, when he cannot lawfully make it in consequence of the goods being *in custodiâ legis;* in other words, when he is prevented from making it by the act of the law. If, in the present case, the proceedings taken by the Belleville Iron Works Company were absolutely void, the lessors were not precluded from seizing the property; if only voidable, they were precluded.

After the decision of the Supreme Court of Louisiana in the case, the cause was remanded to the Fourth District Court of New Orleans, and that court, on the 23d of March, 1860, ordered, adjudged, and decreed, that the order of the court, entered on the 29th December, 1858, staying all judicial proceedings against the property of the company, be " vacated and annulled;" and that the plaintiff (Jeffries) recover of the company the sum of $3262, &c. The Supreme Court subsequently held, when the case came up on another appeal, that the effect of this judgment was to annul the order of 29th December, 1858, in all its parts, and to allow the creditors to proceed as if there had been no surrender, and that the money in the hands of the syndic remained the property of the company and could be seized on execution, and did not become the property of its creditors, by virtue of the *cessio bonorum.*

This vacation of the original order, and setting aside the proceedings had under it, does not, of itself, afford an answer to the question whether the proceedings were absolutely void or only voidable. Proceedings are often set aside for mere irregularities. The judge who accepted the cession had jurisdiction of the subject-matter, and the parties were before him. The order accepting the cession contained an inhibition that all judicial proceedings against the property of the company should be stayed. The defect in the proceedings was, that the corporation was not such a person as was entitled to the benefit of the law. Could such an order be disregarded so long as it was not vacated or reversed? Was it not the duty of the lessors to respect it? How could they safely issue a writ of provisional seizure when there was an express inhibition of all judicial proceedings against the property in a proceeding to which they were parties? The order of the judge accepting the cession, and inhibiting judicial proceedings, was a judicial act. In making it he had to decide on the question of his own jurisdiction over the subject-matter and the parties; and although his decision may have been wrong, acts done in pursuance of it were binding until they were reversed or set aside. All

parties acted on this principle. The defendants complied with all orders directed to them in the case. When their actions were cumulated with the insolvent proceedings, they acquiesced in the order of the court, and followed up their rights in regular procedure by contestation and appeal; and only proceeded to enforce their judgments when they had obtained a decision of the Supreme Court in their favor, and a decree of the District Court of New Orleans in pursuance thereof, vacating the original order. Under these circumstances it hardly lies in the mouths of the defendants to say that the lessors ought to have disobeyed the order of the judge, and disregarded all the subsequent proceedings before they were reversed; and that they should have met the court with the issue of the strong hand.

But without relying on this equitable aspect of the case arising from the respect due to the solemn acts of a judicial tribunal, and the conduct of all the parties concerned, there seems to be no sound technical reason for regarding the act of the judge in making the order of December 29th, 1858, as absolutely void. He had jurisdiction, both of the subject-matter and of the parties; but the principal party, the applying debtor, was incapacitated to sue for the relief afforded by the law. Being a corporation, though a "person" in the legal sense of the term, it was not embraced within the intent and meaning of the insolvent law. Is this anything more than the common case of a party instituting a suit in court who turns out to have no legal standing in the court? And yet no one would assert that this predicament renders the entire proceedings absolutely void, and the court and all its officers trespassers. If a married woman brings an action in her own name, without joining her husband, the proceeding is not void, although the defect may be pleaded in bar, or set up as a defence on the trial.

Without pursuing the subject further, it suffices to say that, in our judgment, the lessors, under the circumstances of this case, were properly excused from making a seizure of the property of the Belleville Iron Works Company as a means of retaining their privilege for the rent accruing on

the lease, and that said privilege attached to the proceeds of said property in the hands of the syndic.

The plea of prescription cannot be sustained in this case, inasmuch as the bill was filed in February, 1867; and we have lately held, in the case of *Adger* v. *Alston*,\* that all statutes of prescription and limitation were suspended, at least in the Federal courts, during the period of the late civil war, which was not solemnly determined in Louisiana until the President's proclamation of April 2d, 1866.

DECREE AFFIRMED.